■ In the Matter of ELIZABETH GRAY, Appellant, v PAUL JONES, JR., Respondent. (And Another Related Proceeding.) [674 NYS2d 174] —White, J. Appeal from an order of the Family Court of Broome County (Ray, J.), entered May 7, 1997, which, *inter alia*, granted respondent's application, in a proceeding pursuant to Family Court Act article 6, for custody of the parties' minor child.

The parties, who were never married, are the parents of a son born in 1992. Two months after the child's birth, petitioner and the child, without notice to respondent who had evinced little interest in the child, moved from Tompkins County to Arizona. Although he had made no attempt to provide child support, respondent filed a petition in Tompkins County Family Court in August 1992 seeking to establish paternity, custody or visitation. It appears that this petition was dismissed due to the failure to serve it upon petitioner. Subsequently, in 1994, Arizona on behalf of petitioner obtained an order, *inter alia*, directing respondent to pay child support. The indications in

the record are that respondent did not comply with this order. In any event, the parties had little contact with each other until August 1996 when respondent induced petitioner to return to New York with the child and stay with him in Monroe County. A few days after petitioner's arrival, respondent filed a petition for custody in Monroe County Family Court that was ultimately transferred to Broome County Family Court where petitioner was seeking similar relief. Following a trial, Family Court ordered that sole custody be given to respondent with supervised visitation to petitioner. Petitioner appeals.

In a custody proceeding, Family Court must predicate its determination on what it finds to be the best interest of the child (*see, Eschbach v Eschbach*, 56 NY2d 167, 171). To fulfill this responsibility, Family Court must assess all relevant factors, " 'including the quality of the parents' respective home environments, the length of time that the present custody arrangement has been in place and each parents' past performance, relative fitness, and ability to guide and provide for the child's intellectual and emotional development' " (*Matter of De Losh v De Losh*, 235 AD2d 851, 852, *lv denied* 89 NY2d 813, quoting *Matter of Alice A. v Joshua B.*, 232 AD2d 777, 779). The record shows that Family Court considered these factors in arriving at its determination that petitioner was unfit to be the custodial parent and that it was in the child's best interest to reside with respondent. Inasmuch as Family Court was in the best position to evaluate the testimony, character and demeanor of the parties, we accord deference to its findings and will not disturb them unless they lack a sound and substantial basis in the record (*see, Matter of Machukas v Wagner*, 246 AD2d 840, 842, *lv denied* 91 NY2d 813; *Matter of Denise AA. v David AA.*, 237 AD2d 680, 682).

Family Court predicated its determination principally upon the testimony of two child-care protective workers and the child's treating psychologist. The caseworkers related that when they interviewed the child he exhibited detailed knowledge of the drug culture to the extent that he freely used vulgar street language and related that he had used drugs and alcohol. Further, he claimed to have witnessed a murder committed by one of petitioner's friends. The worker who conducted a home study of petitioner's living arrangements testified that every time she went to petitioner's apartment there were unidentified males loitering around, numerous bottles of beer littering the floor and it was dark. There was also proof that petitioner had tested positive for cocaine. The clinical psychologist stated that when he first saw the child he was out of control, which

matched the caseworkers' description of the child's behavior. The psychologist ascribed this behavior to a fundamental lack of guidance and structure in the child's life. He further reported that after being with respondent the child showed a "pretty clear positive behavior change" and recommended that the child stay with respondent, who is gainfully employed and actively pursuing therapy for the child.

Given this record, Family Court had no choice other than to designate respondent as the custodial parent even though, until recently, he had abnegated his parental responsibilities. Accordingly, we conclude that Family Court's determination has a sound and substantial basis in the record.

Contrary to petitioner's assertion, Family Court did not abuse its discretion by failing to obtain independent psychological evaluations of the parties since petitioner did not make such request until the middle of the trial and, further, there was no claim that the parties had psychological problems (see, Matter of Smith v Kalman, 235 AD2d 848, 849; Matter of Studenroth v Phillips, 230 AD2d 247, 251; Matter of Clark v Dunn, 195 AD2d 811, 814). Insofar as the child was concerned, Family Court had the benefit of respondent's expert testimony, which was subjected to the cross-examination of petitioner's attorney.

Lastly, although the Law Guardian did not submit a report and recommendation to Family Court (see, Matter of Hall v Keats, 184 AD2d 825, 827), he nevertheless provided meaningful representation to the child since he actively participated in the trial by cross-examining the witnesses, raising appropriate objections and presenting his own witness (see, Matter of Effner v Scott, 194 AD2d 890, 892). For these reasons, we affirm.

Cardona, P. J., Mercure, Peters and Spain, JJ., concur. Ordered that the order is affirmed, without costs.